**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DARRYL STEWART,

      Plaintiff,

                                            CV 11-0298 MCA/WPL

v.                                     consolidated with
                                            CV 11-0496 MCA/WPL

METROPOLITAN DETENTION CENTER et al.,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

During and after his incarceration at the Bernalillo County Metropolitan Detention Center ("MDC"), Darryl Stewart filed multiple lawsuits against Correctional Medical Services, Inc. ("CMS"), which provided medical services at MDC, and Dr. William Shannon, its director, for allegedly failing to provide appropriate medical care. In this action, a consolidation of Stewart's seventh and ninth lawsuits on the matter (*see* Doc. 12), Stewart alleges that CMS, Shannon, Peni Rene, and Sandra Naranjo (collectively "the Medical Defendants") were medically negligent and deliberately indifferent to his serious medical needs. (Doc. 1 Ex. 1 at 11-12; Doc. 93 Ex. A at 10.) He also alleges that Compass Group USA, Inc., doing business as Canteen Correctional Services ("Canteen"), which provided food services at MDC, and Walter Bell, Canteen's Food Service Supervisor (collectively "the Canteen Defendants"), supplied him with meals that were nutritionally deficient and inadequate for someone with his medical conditions. (Doc. 1 Ex. 1 at 11; Doc. 21 at 6.) Finally, Stewart alleges that MDC employees Ron Torres, Larry Grant, and

Steven Lucero (collectively "the MDC Defendants") engaged in a variety of wrongdoing while Stewart was imprisoned at MDC. (Doc. 1 Ex. 1 at 11-12; Doc. 21.)

In response to Stewart's first Complaint (Doc. 1 Ex. 1) and second Complaint (Doc. 93 Ex. A), each set of Defendants filed its own *Martinez* report (Doc. 93 (Medical Defendants); Doc. 101 (Canteen Defendants); Doc. 106 (MDC Defendants)) claiming that Stewart's claims are procedurally or substantively deficient. Stewart filed a response in opposition to these *Martinez* reports (Doc. 115); and the Medical and Canteen Defendants each filed replies (Doc. 116; Doc. 117). This matter has been referred to me for a recommendation as to the final disposition. (Doc. 3.) Having considered the parties' submissions and the relevant law, and otherwise being fully advised in the matter, I find that Stewart's claims against the Medical Defendants should be barred by the doctrine of claim preclusion and that he failed to exhaust his remedies against the Canteen and MDC Defendants as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (2006). Therefore, I recommend that the Court dismiss Stewart's claims against the Medical Defendants with prejudice and dismiss his claims against the remaining Defendants without prejudice.

## BACKGROUND[1]

### I.      Factual Background

Stewart was housed at MDC after his June 4, 2009 arrest (Doc. 42 at 2), and he remained a prisoner at MDC during all relevant events (Doc. 93 at 1). On June 22, 2009, Stewart underwent an intake health assessment, where he indicated that he suffered from a painful double hernia, a cyst on his bladder, hypertension, asthma, and low back pain. (Doc. 93 Ex. C at 1-2.) Two days later, Stewart requested a medical visit to address pain that he was experiencing (Doc.

---

[1] Unless otherwise indicated, the facts described herein are not in dispute.

93 Ex. A at 3), and tests were ordered the next day (Doc. 93 Ex. C at 4). On July 2, 2009, Stewart underwent a baseline examination by MDC's disease clinic. (*Id.* at 5-7.)

The next day, Stewart submitted a medical request asking for medication for high blood pressure and claiming that he was passing blood in his urine and feces. (*Id.* at 8.) On July 4, 2009, a CMS physician prescribed medications for high blood pressure, pain and muscle discomfort, constipation, allergies, and asthma. (*Id.* at 11.) The physician also scheduled thrice-a-week blood pressure tests. (*Id.*)

Over the rest of July 2009, Stewart submitted at least eight additional medical requests seeking surgery for his bladder cyst and double hernia (*id.* at 12, 16, 19-21) or stating that he was coughing up blood or passing blood in his waste (*id.* at 23, 25, 27). Stewart was seen by CMS's medical team several times during this period, his medications were adjusted, and multiple tests were ordered. (*Id.* at 9-10, 14, 17, 22.) The medical team did not observe Stewart coughing up blood (*id.* at 25), a chest x-ray revealed no abnormalities (*id.* at 26), a urinalysis revealed no signs of blood in Stewart's urine (*id.* at 15), and medical notes from later that month state that Stewart refused a fecal test (*id.* at 23). Stewart's physician also ordered an off-site surgical consultation. (*Id.* at 17.) Dissatisfied with this course of action, Stewart threatened litigation against Shannon if his medical problems were not immediately addressed. (*Id.* at 24.)

Stewart continued to receive medical treatment throughout the rest of 2009. Stewart filed multiple medical requests during August and early September 2009, and CMS medical personnel examined him shortly after each request was made and occasionally adjusted his treatment or prescriptions. (*Id.* at 28-36.) An off-site surgical consultation in October 2009 revealed no signs of blood in Stewart's urine, but it did reveal signs of intestinal irritation as well as a "very small" single hernia (*Id.* at 37-42, 46.) The examining physician ordered a CT scan (*id.* at 38), which

occurred later that month and revealed intestinal irritation but no cysts (*id.* at 43). The physician also wanted to screen for colon cancer before scheduling any operation for Stewart's hernia, but Stewart was unable to undergo his colonoscopy as originally scheduled because he ate on the morning of the procedure, forcing the physician to reschedule for April 2010. (*Id.* at 46.)

Also during the latter half of 2009, Stewart sought to visit the law library. (Doc. 1 Ex. 1 at 8.) He was told that his unit would be allowed to visit the law library in several days but that prisoners would only be allowed to visit once every few weeks because library materials were missing. (*Id.*; Doc. 21 at 3-4.)

For the next few months, Stewart would periodically file medical requests detailing unrelated medical concerns, and CMS personnel would examine him shortly after these requests were filed. (*Id.* at 48-57, 59-60). On March 4, 2010, Stewart was taken by ambulance to a nearby hospital, where his complaints of abdominal pain led emergency room medical staff to order tests checking for an inflamed gallbladder. (*Id.* at 61-64.) The examining physicians concluded that his gallbladder was not inflamed and that any pain he was feeling was not related to that organ. (*Id.* at 67-70.) The consulting physician recommended a mental health evaluation and additional imaging of Stewart's abdomen, and he suggested surgical removal of the gallbladder as an elective procedure. (*Id.* at 70.)

Several days later, when Stewart complained of having overly salty food, blurry vision, and other health issues, the CMS team ordered more testing and switched Stewart to a "cardiac diet." (*Id.* at 72.) The Canteen Defendants, dubbing this the "Low Fat/Low Salt Diet," state that MDC medical staff would generally prescribe this meal plan to prisoners experiencing hypertension, heart disease, and other health problems. (Doc. 102 at 11.) For this diet, the Canteen Defendants say that they follow MDC directives and guidelines in preparing foods

containing less sodium, fewer saturated fat calories and sugary carbohydrates, and more fiber. (*Id.*) The Canteen Defendants claim that they started preparing such meals for Stewart "beginning on or about March 16, 2010," about a week after the cardiac diet was prescribed. (*See id.* at 10.)

When CMS personnel followed up with Stewart on March 16, he said he was feeling better, and the examining staff member elected to keep him on the same treatment plan. (Doc. 93 Ex. C at 73.) Stewart was seen by medical personnel two other times that week regarding complaints of blurry vision and a wish to speak to a doctor about his hernia. (*Id.* at 74-78.)

With Stewart's April 2010 colonoscopy appointment approaching, a CMS staff member met with Stewart on March 25. (*Id.* at 79-80.) At the meeting, Stewart claimed that he was not receiving his blood pressure medication, stated that he had filed grievances about his diet trays, and complained that his hernia surgery was being delayed. (*Id.*) The examining staff member reviewed Stewart's records and confirmed that Stewart was regularly receiving his blood pressure medication and that he was prescribed a cardiac diet. (*See id.*) The staff member reported that Stewart claimed to understand what was going on when he left the appointment (*id.* at 80), though Stewart filed another medical request four days later wondering why CMS had not yet had his hernia "fixed" (*id.* at 81).

Medical notes from March 31, 2010, show that Stewart refused to be moved to medical housing for his upcoming colonoscopy. (*Id.* at 82.)  According to the notes, Stewart complained that the medical team was "not doing anything," that his food was "salty," and that "I just want to sign my paper to refuse [treatment] and go." (*Id.*) According to CMS records from one week later, Stewart remained adamant about refusing medical services, claiming that he had previously received a colonoscopy at another institution and that his medical team at that time had let him

"do it" in his cell. (*Id.* at 84.) For his part, Stewart maintains that he never "refused any medical treatment necessary to treat his hernia at any time." (Doc. 115 at 13.)

The Canteen Defendants claim that Canteen changed Stewart to a vegetarian diet on April 8, 2010, pursuant to the CMS team's instructions. (Doc. 102 at 12.) This dietary plan incorporated a meat-free diet into Stewart's existing cardiac diet. (*Id.*) The Canteen Defendants say that Stewart remained on this diet plan until April 21, 2010, at which time Stewart was transferred from MDC to another facility. (*Id.*; *see also* Doc. 93 at 11.) Stewart denies ever receiving a vegetarian diet. (Doc. 115 at 15.)

## II.    Grievance System and Record

MDC maintains a grievance process through which prisoners can raise complaints regarding the conditions of their imprisonment. (*See* Doc. 103 Ex. A (MDC Policy 13.09).) Pursuant to this policy, an inmate should first attempt to resolve his complaint informally. (*See id.* at 2.) If the prisoner is dissatisfied with the outcome of that process, he may meet with MDC's Grievance Classification Specialist ("Specialist"). (*See id.*) If the Specialist determines that the prisoner's complaint is a grievable issue, he provides Form MDC-5, an Inmate Request Information Form ("Grievance"), to the prisoner, who may then write out his complaint on the form and return it to the Specialist. (*See id.* at 2-3.) After the Specialist signs the form and returns a copy to the prisoner, these forms are copied and logged, then forwarded to the appropriate division manager for resolution. (*Id.* at 3-4.) The division manager must file a response within ten working days, with copies of the response added to the grievance log and given to the prisoner. (*Id.* at 4.) If he is not content with the response, the prisoner may then request Form MDC-4, an appeals form, and submit the completed document within five days

after receiving the initial response. (*Id.* at 5.) The Deputy Chief then issues his response, which constitutes the institution's final action on the grievance. (*Id.*)

Stewart submits several exhibits that he says show that he exhausted his administrative remedies before instituting legal action against the Canteen Defendants and the MDC Defendants.[2] However, only one of these Grievances appears to have garnered a response. A March 28, 2010 Grievance addressed to "Food Service" complains that Stewart was "having a lot of problems with the Diet Trays" and that the "food service" team was "overid[ing] what the Doctor said." (Doc. 115 Ex. A-2.) The document was forwarded to Canteen, which claims that this form was "treated as an informal information request" rather than a formal grievance (Doc. 103 at 4), apparently reaching this conclusion because MDC's records contain no evidence of any food service Grievances filed by Stewart (Doc. 117 at 4). A Canteen staff member responded that the company was following Stewart's cardiac diet order. (Doc. 103 at 3-4; *see also* Doc. 115 Ex. A-2.) The parties do not provide any evidence that Stewart appealed Canteen's response.

Stewart also provides copies of an April 2, 2010 Grievance claiming that his meat and potatoes were too salty (Doc. 115 Ex. A-1); an April 4, 2010 Grievance alleging that Lucero took his diet tray away and used an offensive racial epithet (Doc. 115 Ex. A-3); and an April 4, 2010 Grievance to Bell in "Food Service" complaining of salty meat (Doc. 115 Ex. A-4). None of the exhibits feature a response from their intended recipients or anyone else, and the Canteen and MDC Defendants claim that there is no record of such Grievances being filed in accordance with MDC's grievance policy. (*See* Doc. 106 at 2; Doc. 117 at 4.) Stewart also does not provide any exhibits showing that he appealed any responses to these forms.

---

[2] Stewart also submitted to the Court a significant number of Grievances and an appeal form regarding his medical claims. (*See* Doc. 1 Ex. 1 at 14-17; Doc. 105 Ex. A-5 to A-8.) Because the Medical Defendants do not raise non-exhaustion of administrative remedies as grounds for summary judgment, I do not refer to any of these records unless they are relevant to claims where non-exhaustion has been raised by the other Defendants.

### III.    Procedural Background

During the latter half of 2009, around the time of Stewart's first surgical consultation, Stewart actively pursued litigation against CMS, Shannon, Canteen, Torres, MDC, and the County of Bernalillo. Between August 28 and December 11, 2009, Stewart filed three lawsuits in New Mexico state court and two lawsuits in the District of New Mexico. (Doc. 93 at 4-8). Although there were small variations in the claims and defendants featured in the lawsuits, each suit at minimum pursued a claim of medical negligence against Shannon. (Doc. 93 Ex. D-H.) The first state lawsuit was dismissed with prejudice after Stewart failed to comply with the state court's order to properly serve the defendants. (Doc. 93 Ex. P). The remaining two state lawsuits were removed to this Court (Doc. 93 Exs. K-L), and each of the four open lawsuits was dismissed without prejudice at Stewart's request in December 2010 or February 2011 (Doc. 93 Exs. I-J, M-N).

Approximately five months after he was transferred from MDC, Stewart again began to pursue litigation against CMS, Shannon, Canteen, and MDC. Between September 15, 2010, and May 23, 2012, Stewart filed five lawsuits in New Mexico state court and three lawsuits in the District of New Mexico. (Doc. 93 at 12-15.) Two of the state lawsuits, later removed to this Court (Doc. 93 Exs. T, V), form the foundation of the present action.

Stewart's February 8, 2011 Complaint in state court originally named MDC, CMS, and Canteen Corporation as Defendants. (Doc. 1 Ex. 1.) Among other claims, Stewart initially alleges that CMS and MDC were medically negligent and deliberately indifferent to his serious medical needs, that Canteen Corporation failed to meet his dietary needs, and that MDC subjected him to threats, assault, harassment, racial discrimination, overcrowded and underheated cells, and insufficient access to the facility's law library. (*Id.* at 11-12.) Stewart's

April 7, 2011 Complaint raises allegations of medical indifference and negligence, "suffering and pain," and "mental anguish and mental abuse" against CMS and Shannon. (Doc. 93 Ex. A.) After both cases were removed from state court (Doc. 93 Exs. T, V), this Court consolidated the two actions into the present case (Doc. 12).

In my first Proposed Findings and Recommend Disposition ("PFRD") in this case, I observed that MDC could not be sued in this Court but that some of the claims brought against the detention center could be brought against the individuals responsible for the alleged wrongdoing. (Doc. 16 at 2.) Accordingly, I recommended that the claims against MDC be dismissed if Stewart could not name any of the allegedly responsible individuals. (*Id.*) Subsequently, Stewart filed "objections" in which he named Rene and Naranjo as additional individuals responsible for the alleged medical wrongdoing; Torres, Lucero, and Grant as individuals behind the alleged threats, assault, harassment, and discrimination claims; and Bell as an individual Canteen supervisor bearing responsibility for Stewart's meal-related complaints. (Doc. 21.)[3]

The Court adopted my PFRD and dismissed MDC from this lawsuit. (Doc. 37 at 3.) The Court also interpreted Stewart's objections as a supplement to his complaint and reviewed them for frivolousness and failure to state a claim. (*Id.* at 1.) In doing so, the Court added Rene, Naranjo, Torres, Lucero, Grant, and Bell as Defendants for certain claims while dismissing other claims as frivolous. (*Id.* at 2-3.)

After all of the individual Defendants' identities had been ascertained, I ordered the Defendants to submit *Martinez* reports responding to Stewart's claims and providing all relevant

---

[3] Although Stewart only provided partial names for Rene, Naranjo, Lucero, and Grant in his objections, these parties' full names were revealed in later filings by the parties after I ordered limited *Martinez* reports. (Doc. 47; Doc. 55; *see also* Doc. 53 (naming Rene and Naranjo); Doc. 107 (recognizing that Lucero and Grant had been identified).)

information. (Doc. 83) In the Order, I informed the parties that the information presented in the *Martinez* reports and any responses thereto could be used in determining whether to award summary judgment to either party. (*Id.*)

The Medical Defendants filed a *Martinez* report and exhibits arguing that Stewart's claims are barred by claim preclusion[4] and that Stewart has failed to demonstrate that he was denied medical treatment. (Doc. 93.) The Canteen Defendants filed a second *Martinez* report and exhibits arguing that Stewart failed to exhaust administrative remedies, that Stewart is not entitled to punitive or compensatory damages, that Stewart cannot state a claim against them under 42 U.S.C. § 1983, and that they are entitled to qualified immunity. (Doc. 101; *see also* Doc. 102 (statement of facts); Docs. 103-05 (supporting affidavits).) Finally, the MDC Defendants filed a third *Martinez* report and exhibits, arguing that Stewart failed to exhaust administrative remedies and that the dismissals of Stewart's previous lawsuits require the Court to dismiss these claims as well under the PLRA. (Doc. 106.)

In response, Stewart argues that he properly exhausted MDC's grievance process with respect to his claims and that the Defendants and their witnesses who say otherwise are lying. (Doc. 115 at 2-3, 12, 15.)[5] He also denies having refused medical treatment and insists that the Medical Defendants are incorrect about his medical condition. (*Id.* at 13-14.) He further claims that he never received a vegetarian diet while housed at MDC. (*Id.* at 15.)

The Medical Defendants filed a reply stating that Stewart failed to refute their arguments that he received appropriate medical care and that his claims were barred by claim preclusion.

---

[4] Though the Medical Defendants use the term "res judicata," the Tenth Circuit employs the term "claim preclusion" for purposes of clarity. *See Yapp v. Excel*, 186 F.3d 1222, 1226 n.1 (10th Cir. 1999).

[5] Stewart's response has been filed in such a way that his exhibits are included between the pages of the document, leading to some inconsistency in the page numbering. Although the document features handwritten numbers in the upper-right corner of each page, my citations to this document refer to the page numbers assigned by CM/ECF.

(Doc. 116.) The Canteen Defendants also filed a reply in which they repeat their argument that Stewart failed to exhaust his administrative remedies and contend that Stewart has not demonstrated that his meals were nutritionally inadequate. (Doc. 117.) The MDC Defendants did not file a reply.

As this case has developed, the remaining lawsuits filed by Stewart have been largely resolved or put on hold. A March 2011 federal lawsuit was dismissed by this Court as requested by Stewart; however, the Court dismissed the action with prejudice, noting that Federal Rule of Civil Procedure 41(a)(1) requires such an outcome when the plaintiff has previously dismissed a court action based on or including the same claim. (Doc. 93 Ex. S.) The other two actions filed in the District of New Mexico were subsequently dismissed with prejudice on claim preclusion grounds. (Doc. 93 Ex X; *Stewart v. Shannon*, No. CV 12-0560 JB/KBM, Doc. 8 (D.N.M. Sept. 24, 2012).)[6] Two other lawsuits in state court have been dismissed or stayed while the present action is litigated (Doc. 93 Exs. Y-Z), and the record does not reveal whether a third state lawsuit filed in April 2012 (Doc. 93 Ex. AA) remains active.

This matter is now before me on Defendants' *Martinez* reports, which request that the Court grant summary judgment in Defendants' favor.

## STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an

---

[6] "[A] court may . . . take judicial notice, whether requested or not[,] of its own records and files, and facts which are part of its public records. Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (citations omitted).

effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In determining whether a plaintiff meets this two-part test, this Court must "construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). In ruling on a summary judgment motion, the court may neither make credibility determinations nor weigh the evidence. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation marks omitted).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citation omitted). A *Martinez* report is also treated as an affidavit, and this report and the supporting documents can be used in determining whether to grant summary judgment if the report's statements are based on personal knowledge and sworn under penalty of perjury. *Id.* A court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings when they are in conflict with pleadings or affidavits. *Id.* at 1109. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006).

Finally, as with all pleadings filed by pro se individuals, I liberally construe the allegations contained in Stewart's complaint and his response to the *Martinez* reports. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404

U.S. 519, 520-21 (1972)). However, I must apply the same legal standards applicable to pleadings drafted by counsel. *Id.*

ANALYSIS

Stewart brings a variety of claims against nine Defendants in this action, and each group of Defendants raises its own grounds for summary judgment as to the allegations against them. For the sake of clarity, I have organized the claims by the Defendants against whom they are brought. Accordingly, I first address Stewart's claims against the Medical Defendants for medical negligence, deliberate indifference to his serious medical needs, and pain, suffering, and mental anguish related to his medical treatment. Next, I address Stewart's claims against the Canteen Defendants for insufficiently meeting his dietary needs. Finally, I address the remaining claims brought against the individual MDC Defendants.

## I.     Claims Against Medical Defendants

Stewart alleges that the Medical Defendants were medically negligent and deliberately indifferent to his medical needs, resulting in pain, suffering, and mental anguish. (*See* Doc. 1 Ex. 1 at 11-12.) These Defendants counter that Stewart's allegations against them are barred by the doctrine of claim preclusion. (Doc. 93 at 16-19.) The Medical Defendants also argue that the medical care that they provided to Stewart was appropriate and consistent with his symptoms and his test results. However, I do not reach this argument, for I find that Stewart's claims against the Medical Defendants should be barred under the doctrine of claim preclusion.

"Under [claim preclusion], a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982). "Under federal law, the application of claim preclusion requires that three elements be satisfied: '(1) a judgment on the

13

merits in [an] earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits.'" *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006) (quoting *Yapp v. Excel*, 186 F.3d 1222, 1226 (10th Cir. 1999)). Although federal courts typically refer to an "earlier action" as having preclusive effect over a later action, "irrespective of which action or proceeding was first brought, it is the first final judgment rendered in one of the courts which becomes conclusive in the other as [claim preclusion]." *Chicago, R. I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 615-16 (1926); *see also Carr v. CIGNA Sec., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996) ("[T]he barred suit could be a suit that had been filed before the suit in which the preclusive judgment is entered."); 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4404 (2d ed. 2012) (recognizing "the general rule that as between actions pending at the same time, [claim preclusion] attaches to the first judgment regardless of the sequence in which the actions were commenced").

The Medical Defendants identify at least two lawsuits that were decided on the merits and that they claim involve the same parties and the same causes of action related to Stewart's medical treatment.[7] Stewart's August 2009 suit against CMS and Shannon in state court was premised on many of the same allegations of poor medical treatment alleged here. (Doc. 93 Ex. D.) The complaint was dismissed with prejudice on June 21, 2010, after Stewart failed to properly serve the defendants. (Doc. 93 Ex. P; *see also* N.M.R. CIV. P. 1-041(b) (noting that a

---

[7] The Medical Defendants also argue that several earlier cases dismissed without prejudice by this Court at Stewart's request should be construed as decisions on the merits under Federal Rule 41(a)(1)(B). (*See* Doc. 93 at 18.) Because I find that Stewart's claims against the Medical Defendants are barred by express decisions on the merits in other lawsuits, I do not address this argument.

I also observe that this Court has dismissed at least two other actions by Stewart against Shannon with prejudice. (*See* Doc. 93 Ex. X; *Stewart*, No. CV 12-0560 JB/KBM, Doc. 8.) Both dismissals were based on claim preclusion principles and predicated on the adjudication of Stewart's March 2011 complaint, which I analyze here. To the extent that the dismissal of Stewart's March 2011 complaint bars him from pursuing claims against the Medical Defendants, the dismissal orders in these two lawsuits also preclude such claims from being brought by Stewart.

14

dismissal for failure to comply with court rules operates as an adjudication on the merits unless the dismissal order states otherwise).)[8] Stewart's March 2011 complaint, filed with this Court one month after Stewart filed the first Complaint here, alleged that CMS and Shannon had "shown total disregaurd [*sic*] to my medical condition during my incarceration at the Bernalillo County Detention Center." (Doc. 93 Ex. R.) When Stewart moved to dismiss the complaint without prejudice, the Court granted his motion in part on March 25, 2011. (Doc. 93 Ex. S.) However, because Stewart had "previously dismissed . . . [an] action based on or including [one of] the same claim[s]," the Court dismissed the complaint in question with prejudice, recognizing that such a dismissal must "operate[] as an adjudication on the merits" under the Federal Rules. (*Id.* (quoting FED. R. CIV. P. 41(a)(1)(B))). Accordingly, these earlier judgments on the merits satisfy the first requirement of claim preclusion.

The parties to these claims are also identical or in privity to identical parties in the earlier lawsuits. As here, the earlier judgments involved claims by Stewart against CMS and Shannon. Further, the allegations against Rene and Naranjo are premised on their roles as assistants to Shannon (*see* Doc. 21 at 4-5); indeed, although Stewart does not name her as a defendant, his August 2009 complaint alleges poor medical treatment by Rene (*see* Doc. 93 Ex. D at 6). While "[t]here is no definition of 'privity' which can be automatically applied in all cases" involving the doctrine of claim preclusion, courts have found privity to exist between parties where their legal interests are so closely identified that the interests of one who was not a party to the previous litigation were effectively identical to the interests of one who was a party to that litigation. *See St. Louis Baptist Temple, Inc., v. FDIC*, 605 F.2d 1169, 1174-75 (10th Cir. 1979)

---

[8] The fact that this decision was reached in a § 1983 action in state court, as opposed to federal court, does not reduce its potential preclusive effect in the instant case. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83-85 (1984).

(citing *United States v. Cal. Bridge & Const. Co.*, 245 U.S. 337 (1917)); *see also Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998) ("'[P]rivity' is now seen as 'a descriptive term for designating those with a sufficiently close identity of interests.'" (internal citation omitted)). Here, I find that that Rene and Naranjo's interests were effectively identical to Shannon's interests in the earlier litigation, as this lawsuit is predicated on allegedly inadequate medical care that they provided at Shannon's behest. Therefore, Stewart and the Medical Defendants here are identical to or in privity to the parties in the earlier actions, and the second requirement of claim preclusion is satisfied.

Finally, the causes of action against the Medical Defendants in this suit are identical to those raised by Stewart in the previous actions. Under the "transactional approach" adhered to by the Tenth Circuit, "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence." *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). Here, the facts pertaining to Stewart's medical claims in his Complaints are practically a verbatim recitation of the facts and allegations raised in Stewart's August 2009 complaint. (*Compare* Doc. 1 Ex. 1 at 2-6, *and* Doc. 93 Ex. A at 3-7, *with* Doc. 93 Ex. D at 4-8.) Further, Stewart's March 2011 complaint recites many of the same allegations and brings the same claims of medical negligence and medical indifference. (*Compare* Doc. 1 Ex. 1, *with* Doc. 93 Ex. R.) Because the claims against the Medical Defendants arise from the same allegations of wrongdoing in the earlier lawsuits, all claims or legal theories arising out of these allegations were either present in the previously dismissed actions or were required to be so. As such, the causes of action in each of these cases are considered identical, and the instant Complaints satisfy the third and final requirement of claim preclusion.

The Medical Defendants also refer to a purported fourth requirement of claim preclusion, a "full and fair opportunity to litigate the claim" in the previously dismissed actions. (Doc. 93 at 17 (quoting *Nwosun*, 124 F.3d at 1257).) The Tenth Circuit recognizes that this factor is generally irrelevant when the other three requirements are present. *See Yapp*, 186 F.3d at 1226 n.4. Nonetheless, Stewart's previous actions satisfy this factor, as none of the procedural limitations, incentives to fully litigate, or relations between the parties in the earlier cases gave rise to "a deficiency that would undermine the fundamental fairness of the original proceedings." *See Nwosun*, 124 F.3d at 1257 (citing *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988); *Sil-Flo, Inc. v. SFHC*, 917 F.2d 1507, 1521 (10th Cir. 1990)). Indeed, the fact that Stewart raised the same claims with the same parties in the earlier actions, including one lawsuit that he voluntarily dismissed, demonstrates that none of these factors prevented him from litigating these claims in the previous lawsuits. On this basis, I conclude that Stewart had a full and fair opportunity to litigate these claims, and this additional factor of claim preclusion is satisfied.

The same claims presented in the instant case against the Medical Defendants have been adjudicated on the merits at least twice prior to the filing of this PFRD, Stewart had a full and fair opportunity to litigate the claims in the earlier actions, and the parties in each of these actions are either identical or in privity to identical parties. Thus, Stewart's claims against the Medical Defendants should be barred by the doctrine of claim preclusion. Accordingly, I recommend that the Court dismiss these claims and Defendants with prejudice.

## II.    Claims Against Canteen Defendants

Next, Stewart alleges that the Canteen Defendants served him nutritionally deficient and

insufficient food.[9] The Canteen Defendants claim that Stewart failed to exhaust his administrative remedies before litigating this claim as required under the PLRA. Stewart insists that he made use of MDC's grievance system several times, and he provides evidence in the form of several Grievances containing his complaints about the sodium content of his food. (Doc. 115 Exs. A-1, A-2, A-4.) The Canteen Defendants reply that these Grievances were not properly filed pursuant to MDC's grievance policy. (Doc. 101 at 5-7.)

The PLRA prohibits any action regarding prison conditions from being brought by any inmate until he has exhausted all administrative remedies that are available. 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (recognizing that exhaustion is required for any suit challenging prison conditions, regardless of the cause of action). Because Congress has specifically mandated exhaustion of administrative remedies, the Court cannot waive this requirement, even if the remedy sought is not actually available to the prisoner through the administrative process. *Booth v. Churner,* 532 U.S. 731, 739 (2001) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). A prisoner must properly complete the full administrative review process set by the facility's grievance policy in order to exhaust administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (noting that it is not enough for a prisoner to begin the grievance process without completing it). A prisoner's failure to exhaust administrative remedies is an affirmative defense, *see Jones*, 549 U.S. at 216, that the defendant

---

[9] Although Stewart also brought claims regarding his diet trays being placed on the floor, the Court recognized that these allegations were directed towards MDC corrections officers. (*See* Doc. 37 at 2.) The Court ultimately dismissed these allegations due to Stewart's "fail[ure] to allege any injury as a result of these actions." (*See id.*)

bears the burden of establishing, *see Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (citations omitted).

Although the parties disagree as to whether Stewart utilized the grievance process to complain about the quality of his diet, the Canteen Defendants allege, and Stewart does not dispute, that Stewart did not appeal any Grievances that he filed regarding his diet or other food service issues, a step that is required in order to complete MDC's grievance procedures. (*See* Doc. 103 Ex. A at 5-6.) While the Canteen Defendants acknowledge having received and responded to Stewart's March 28, 2010 Grievance in an informal capacity, an MDC employee affidavit attests that there are no records of this Grievance or any Grievances on this topic being filed or appealed in accordance with MDC's grievance policy. (*See* Doc. 103 at 3-4 (affidavit of Raul Griego, MDC Materials Manager and Contract Monitor).)

Stewart does not swear to the facts alleged in his response to the *Martinez* reports under penalty of perjury, and as such the Court should not treat that response as an affidavit for summary judgment purposes. *See Hall*, 935 F.2d at 1111 (citation omitted). However, even if the Court were to consider his response to be an affidavit, Stewart does not claim in his response that he appealed any Grievances regarding his diet, and at any rate he provides no exhibits that would suggest that he had done so. Instead, he notes that he filed one appeal of a Grievance regarding his medical condition and asserts that he otherwise filed Grievances on other matters. (*See* Doc. 115 at 2-3; *see also* Doc. 115 Exs. A-5.) To satisfy the PLRA's exhaustion requirement, however, Stewart must not have simply used the grievance process with respect to his diet claims, but also must have completed this process. *Jernigan*, 304 F.3d at 1032. Thus, construing the facts in the light most favorable to Stewart and assuming that he initially filed his dietary Grievances pursuant to MDC's grievance policy, the Canteen Defendants have nonetheless

established that Stewart did not complete any Grievances on this topic. Accordingly, Stewart may not proceed with his claims against the Canteen Defendants under the PLRA, and I recommend that the Court dismiss these claims and these Defendants.

### III.   Claims Against MDC Defendants

Stewart brings several claims against the individual MDC Defendants in his first Complaint and supplement. Stewart alleges that Torres, as "chief of (M.D.C.) [*sic*]," was responsible for all of the alleged wrongdoing by corrections officers at MDC (*see* Doc. 21 at 2), including a denial of access to the detention center's law library, assault and verbal abuse by other officers, racial discrimination against Stewart, and overcrowded and cold prison conditions (Doc. 1 Ex. 1 at 11-12).  Stewart also claims that Lucero engaged in assault, verbal abuse, racial discrimination, and retaliation for a Grievance filed by Stewart. (Doc. 21 at 3, 6.) Finally, Stewart alleges that Grant engaged in assault, verbal abuse, and threats against Stewart and that Grant ignored the cold conditions in his cell. (Doc. 21 at 2-3, 6.)

While Stewart initially alleged other claims against individual MDC Defendants, the Court has already resolved those claims. In his first Complaint in this case, Stewart alleges that correctional officers were often absent from Stewart's housing unit "for hours at a time." (Doc. 1 Ex. 1 at 11.) Stewart later clarified that blame for this alleged absence should be assigned to Lucero and another officer. (Doc. 21 at 3, 5-6.) Similarly, Stewart claims that officers would put diet trays on the floor next to the cell doors. (*Id.* at 4; Doc. 1 Ex. 1 at 12.) The Court dismissed these claims on the grounds that Stewart failed to allege any injury resulting from the correctional officers' absence from his unit or the placement of food trays on the floor by prisoners' cells. (Doc. 37 at 2.)

Like the Canteen Defendants, the MDC Defendants respond to Stewart's remaining allegations by asserting that Stewart failed to exhaust the administrative grievance process before pursuing this litigation, insisting that Stewart never submitted any Grievances in accordance with MDC's grievance policy. (Doc. 106 at 3-5.)[10] Stewart responds that he did file Grievances "about all of the . . . problems that [he] was having at the jail" according to MDC's grievance policy (Doc. 115 at 12), and he provides support for this assertion in the form of a completed and appealed medical Grievance bearing the signatures of MDC employees (Doc. 115 Exs. A-5 to A-6). He also provides an April 4, 2010 Grievance alleging harassment by Lucero, although this Grievance does not bear a response from any prison officials. (Doc. 115 Ex. A-3.)

As discussed above, a prisoner may not file a federal lawsuit regarding prison conditions unless and until he has exhausted all administrative remedies. 42 U.S.C. § 1997e(a); *see also Porter*, 534 U.S. at 524. The prison's grievance policy must be completed in full in order for the prisoner's administrative remedies to be exhausted. *See Jones*, 549 U.S. at 218 (citations omitted); *Jernigan*, 304 F.3d at 1032. The defendant bears the burden of showing that the prisoner failed to exhaust these remedies. *See Roberts*, 484 F.3d at 1240-41 (citations omitted).

The MDC Defendants provide an affidavit from MDC's Custodian of Records stating that Stewart did not file any Grievances on the matters in question (Doc. 106 Ex. 1 at 1 (affidavit of Olivia Mora)), and they attach Stewart's inmate file, which does not contain any such Grievances (*id.* Ex. A). By contrast, the only Grievance that Stewart says he appealed was with regard to his medical condition (Doc. 115 at 2-3), and his exhibits establish at most that he filled out and perhaps filed, but did not appeal, a Grievance regarding racial discrimination by Lucero

---

[10] The MDC Defendants also assert that Stewart's claims are barred under the PLRA, which prohibits a prisoner from bring a civil action if he has previously filed three or more federal lawsuits that were dismissed on grounds of frivolity, malice, or failure to state a claim. (Doc. 106 at 5.) Because I find that Stewart failed to exhaust his remedies with respect to his allegations against the MDC Defendants, I do not address this argument.

(Doc. 115 Ex. A-3). Thus, even if the Court were to treat Stewart's unsworn response to the *Martinez* reports as an affidavit, there is no genuine dispute that he failed to appeal or otherwise fully grieve his allegations of inadequate access to the law library, assault and verbal abuse, discrimination, retaliation, cold prison cells, or overcrowded prison conditions. As such, the MDC Defendants have established that Stewart failed to complete the grievance process with respect to these allegations. I recommend that the Court dismiss these claims.

CONCLUSION

Stewart's claims against the Medical Defendants are barred by the doctrine of claim preclusion. I therefore recommend that the Court dismiss the claims against these Defendants with prejudice. Further, the Canteen and MDC Defendants have established that Stewart has not fully exhausted his administrative remedies pertaining to his claims against them. Because dismissals for failure to exhaust are typically without prejudice, *see Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir. 2005) (citations omitted), I recommend that the Court dismiss Stewart's claims against these Defendants without prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.